UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SARA J. BROWN, <br><br> Plaintiff, <br><br> v. <br><br> JO ANNE B. BARNHART, Commissioner of the Social Security Administration, <br><br> Defendant. | Case No. CV 05-5663 AJW <br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are undisputed. [JS 1-2]. Plaintiff filed an application for disability insurance benefits on June 2, 2003, alleging disability beginning on November 2, 2002 due to pain in her upper and lower extremities and her back. [JS 2]. Her application was denied in a February 11, 2005 hearing decision by Administrative Law Judge Robert Evans (the "ALJ"). [Administrative Record ("AR") 16-22]. The ALJ concluded that plaintiff was not disabled

because she retained the residual functional capacity ("RFC") to perform light work without frequent overhead reaching, and therefore she could perform her past relevant work as an administrative clerk. [JS 2]. The Appeals Council denied plaintiff's request for review of that decision. [JS 2; AR 5-7].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Credibility**

Plaintiff contends that the ALJ rejected the alleged severity of plaintiff's subjective complaints without legally sufficient reasons.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain

and other symptoms are evaluated).   Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons").  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885.  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ credited plaintiff's subjective complaints to the extent that he found that she could not perform frequent overhead reaching bilaterally and was limited to occasional climbing, balancing, stooping, kneeling, bending, crouching and crawling. [AR 22]. Contrary to plaintiff's contention, the ALJ did not err in rejecting her subjective complaints of disabling pain based in part on the absence of objective evidence corroborating their alleged severity. See Bunnell, 947 F.2d at 345 (stating that the absence of medical findings to support the degree of severity alleged is one factor the ALJ may consider in evaluating the credibility of subjective complaints). Plaintiff alleged disability due to severe pain in her back and extremities. [AR 62]. The ALJ noted that plaintiff's spine and shoulder x-rays showed mostly mild degenerative changes.  [AR 20, 153, 260-261].  The ALJ noted that plaintiff's treating primary care doctor, Dr. Gauer, detected a mild motor strength deficit in December 2004, but other doctors found none. [AR 20, 266].  Dr. Gauer gave plaintiff a diagnosis of "generalized joint pain," which is not a clinical diagnosis but simply a recitation of plaintiff's subjective description of her condition.[AR 241, 264]. Plaintiff argues that Dr. Gauer knows her condition best and supports her claim for benefits [JS 16], but when asked on an assessment form to identify plaintiff's "clinical findings and objective signs," Dr. Gauer replied, "none on exam except w[ith] passive range of motion in her joints she had pain." [AR 241, 264-266].

During examinations by plaintiff's treating orthopedist, Dr. Slutzker, and the

1 Commissioner's consultative physician, Dr. Ganjianpour, plaintiff displayed generally good
2 range of motion of the neck, shoulders and hands, and a mild limitation in lumbar flexion. [AR
3 20, 201-205, 212-213]. Dr. Slutzker's orthopedic findings were minimal. He noted generally
4 mild scattered tenderness over the cervical and lumbar spine without trigger points or hard
5 spasms. [AR 17, 201-205]. Straight leg test and neurological examination were normal. [AR
6 17, 201-205]. Plaintiff denied weakness, numbness or tingling in her extremities. [AR 20, 266].
7 Plaintiff points to positive findings made by Dr. Ganjianpour, including tenderness to
8 palpation, reduced grip strength, range of motion limitation, and a slight limp. [JS 6; AR 212-
9 213]. Those findings, however, did not deter Dr. Ganjianpour from concluding that plaintiff
10 can perform light work, as the ALJ also found. [AR 214]. In sum, the ALJ permissibly
11 concluded that the objective findings did not corroborate plaintiff's complaints of disabling
12 pain.

13 Plaintiff also argues that the ALJ was wrong when he said that plaintiff "reported
14 significant improvement with a course of conservative treatment" by Dr. Slutzker from February
15 2003 to June 2003. [JS 7]. Dr. Slutzker's treatment notes reveal that plaintiff saw Dr. Slutzker
16 for five monthly visits during that period. [AR 201-205]. During her second, third, and fourth
17 visits, in March, April, and May 2003, Dr. Slutzker wrote that plaintiff reported "marked
18 improvement of symptoms" in response to prescribed anti-inflammatory medication and
19 physical therapy. [AR 202-204]. Plaintiff complained of a "slight recurrence in symptoms"
20 during her March visit, but she also admitted that "she has not been conscientious with her
21 rehabilitation exercise program." [AR 204]. In April 2003, she reported a "recurrence in pain"
22 when she stopped anti-inflammatory medication, which again was prescribed. [AR 203]. In June
23 2003, Dr. Slutzker wrote that plaintiff said her neck and low back were "slightly improved but
24 continue to be symptomatic on an off-and-on basis." [AR 201]. That report, of course, came
25 after she already had reported "marked improvement" in her symptoms. On physical
26 examination Dr. Slutzker detected "only scattered tenderness" in the upper back and neck,
27 "minimal limitation" due to soreness and stiffness only at the extremes of cervical spine range
28 of motion, full range of shoulder motion, "minimal, scattered tenderness" in the lower back,

4

lumbar spine flexion limited to 65 degrees, and negative straight leg raising. [AR 201]. He diagnosed "residuals of cervical lumbosacral spondylosis and myofascial strain" and prescribed anti-flammatory medication, muscle relaxant as needed, and home exercises. [AR 201].

Dr. Slutzker's contemporaneous treatment reports undermine plaintiff's inconsistent testimony that Dr. Slutzker's treatment "didn't help" her. [AR 285]. Those records also support the ALJ's conclusion that plaintiff's subjective complaints were not fully credible because she reported significant improvement to her doctor with conservative treatment, notwithstanding her complaints of residual "off-and-on" symptoms. See Morgan, 169 F.3d at 599 (holding that the ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with the use of medication); see generally Warre v. Commissioner of the Social Security Admin., 439 F.3d 1001, 1006 (9th Cir. 2005)("Impairments that can be controlled effectively with medication are not disabling."); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (observing that disability insurance benefits are not intended for those who experience nondisabling pain).

The ALJ also permissibly concluded that plaintiff's alleged limitations were not consistent with her limited treatment history. [AR 20]. During the hearing, plaintiff testified that she stopped seeing Dr. Slutzker in June 2003 because she felt that she was not getting better, but that testimony contradicts her contemporaneous reports to Dr. Slutzker as reflected in his progress notes. Plaintiff also said that she ran out of money to pay for his services, but the ALJ noted that there was no evidence she had attempted to obtain low-cost or subsidized care, such as treatment from a county facility. [AR 20, 283].

After she stopped seeing Dr. Slutzker in June 2003, plaintiff did not receive treatment again until August 2004, when she saw Dr. Gauer for gynecological problems. Plaintiff did not complain of back or joint pain during that visit, a surprising omission considering her allegedly disabling symptoms and the limited number of office visits she said she could afford. [AR 265, 268]. Plaintiff's next visit to Dr. Gauer occurred about a week before the December 1, 2004 hearing, but there is no corresponding treatment report in the record. According to plaintiff's hearing testimony, she went to see Dr. Gauer at her attorney's suggestion to ask for a medical

evaluation for her upcoming hearing. [See AR 286-287]. Plaintiff testified that Dr. Gauer told her that she needed to come in for a work-up before she would write a report, and plaintiff said she had deferred getting the work-up because she was not sure how she would pay for it. [AR 287]. At the urging of her attorney, however, the ALJ left the record open so plaintiff could obtain a post-hearing examination and report from Dr. Gauer. [AR 287, 309, 311]. This evidence indicates that plaintiff's visits to Dr. Gauer in December 2004 were motivated by plaintiff's need for a disability opinion rather than by any exacerbation of her medical condition. Thus, the ALJ did not err in discrediting Dr. Gauer's assessment in part because of the limited extent of plaintiff's treatment with her since plaintiff's alleged onset date. [See AR 19]. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(observing that the claimant's failure to seek consistent treatment "is powerful evidence regarding the extent to which she was in pain"). The ALJ permissibly concluded that plaintiff's allegations of anxiety and depression were not credible because there was no evidence of any treatment for plaintiff's alleged anxiety and depression, plaintiff did not complain of mental health problems to her treatment providers, and the Commissioner's consultative psychiatrist found only "zero-to-mild" mental limitations. [AR 20, 206-209].[1]

Contrary to plaintiff's contention, the ALJ did not equate plaintiff's daily activities with the ability to engage in substantial gainful activity. [See JS 8-9]. Instead, he permissibly considered those activities as one factor that tended to undermine her allegations of disabling subjective symptoms. The ALJ accurately observed that Dr. Bagner, the Commissioner's

---

[1] The ALJ did not misapply the regulations concerning the need to follow prescribed treatment. [JS 17]. See 20 C.F.R. § 404.1530. The Commissioner's regulations state that in order to receive benefits, a claimant "must follow treatment prescribed by your physician if this treatment can restore your ability to work." See 20 C.F.R. §§ 404.1530(a), 416.930(a). The ALJ did not apply that rule to deny benefits. Instead, he permissibly concluded that plaintiff's failure seek any treatment, including low-cost treatment options, during a period of more than a year was inconsistent with the allegedly disabling intensity of her subjective symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (stating that in evaluating subjective symptoms, the ALJ must consider the claimant's treatment and other measures for relief of pain and other symptoms).

examining psychiatrist, reported that plaintiff said she could able to bathe and dress herself, do household chores, manage money, and drive herself. [AR 21, 207]. Plaintiff's testimony portrayed her activities as considerably more limited than she indicated to Dr. Bagner. That discrepancy does not mean that what plaintiff told Dr. Bagner was "factually erroneous." Rather, it suggests that plaintiff's hearing testimony was inconsistent with her earlier statements. See Tonapetyan, 242 F.3d at 1148 (stating that the ALJ can rely on inconsistencies in evaluating credibility). Moreover, plaintiff estimated that she did about half of the housework notwithstanding her discomfort, including vacuuming once a week and changing the bed sheets. [AR 295-296]. She was able to go to the store by herself for small purchases but would go with someone if she had heavier items. [AR 290-291]. Based on the record as a whole, the ALJ permissibly concluded that plaintiff's daily activities were not as severely limited her subjective allegations would indicate. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (holding that the claimant's testimony that she did the laundry, cleaned the house, vacuumed, mopped, dusted, and shopped for groceries was inconsistent with her claim of a severe back impairment).[2]

The ALJ did not arbitrarily discredit plaintiff's subjective complaints, but instead provided legally sufficient reasons based on substantial evidence for finding that her subjective allegations were not fully credible.

///

**Treating physician's opinion**

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Gauer, plaintiff's

---

[2]  In the reply portion of her brief on the issue of credibility, plaintiff points out that there "was no issue of malingering" because she was 61 years old on the day of the hearing, was discharged at "an advanced age" by her employer, and had a long and honorable work history. [JS 14-15]. The ALJ did not suggest that plaintiff was malingering. He acknowledged that plaintiff "worked a long time" [AR 278], but neither plaintiff's age nor her work history exempt her from showing that she is disabled due to one or more severe, medically-determinable impairments. Furthermore, plaintiff was not forced to stop working because of her impairments, but rather because she lost her job when the company she worked for closed. She testified that her symptoms developed gradually after that. [AR 281-282].

primary care doctor. [JS 18-22].

Where the treating physician's opinion is controverted by the opinions of the examining physicians, "the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)). The ALJ met that standard in this case.

On a post-hearing assessment form dated December 15, 2004, Dr. Gauer opined that plaintiff could do less than light work and that she had significant limitations in reaching, handling, fingering, bending and twisting. [AR 243-244]. Plaintiff contends that those limitations are consistent with Dr. Gauer's December 8, 2004 examination findings of limited range of motion in the shoulders, pain on hip flexion, and reduced motor strength (4/5) in the shoulders and lower extremities. [JS 18]. Dr. Gauer, however, said there were no clinical findings or objective signs to support her assessment other than generalized complaints of joint pain (which in turn may account for range-of-motion and other limitations on examination). [AR 241]. Because Dr. Gauer based her assessment totally on subjective pain complaints, the ALJ permissibly rejected her opinion regarding plaintiff's functional restrictions. See Bayliss v. Barnhart, 427 F.3d 1211, 1216-17 (9th Cir. 2005)(noting that "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings," and holding that the ALJ properly rejected a treating source opinion that was based on the claimant's subjective complaints rather than on "clinical evidence"); Morgan, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting Fair, 885 F.2d at 605). X-ray reports dated a few days after Dr. Gauer's report show some degenerative changes in the thoracic spine, mild degenerative changes in the lumbar spine except for degenerative disc changes at L5-S1, and mild degenerative changes of the humeral heads in the shoulders. [AR 260-261]. It is not clear whether Dr. Gauer reviewed those x-rays (which she ordered) before submitting her assessment, but in any case those x-ray reports do not indicate the existence of abnormalities that warrant

her opinion that plaintiff was severely functionally limited.

Plaintiff also argues that Dr. Gauer's findings are consistent with examination findings made by the Commissioner's examining physician, Dr. Ganjianpour, a year earlier, and therefore that the ALJ erred in using inconsistencies between the two reports to discredit Dr. Gauer's opinion. This argument is unpersuasive.

To begin with, Dr. Gauer herself did not rely on any positive examination findings to support her functional assessment other than plaintiff's purely subjective pain complaints. If her examinations had revealed clinical signs or objective findings to support her disability opinion, presumably she would have identified them in support of her disability opinion when asked to do so. [AR 241]. Next, while Dr. Ganjianpour made some positive findings (tenderness and restricted range of motion in plaintiff's shoulders, a positive Finkelstein's test bilaterally[3], reduced grip strength, and a slight limp), he also opined that those findings did not prevent plaintiff from performing the full range of light work. [AR 214]. Thus, the ALJ did not err in concluding that Dr. Ganjianpour's opinion contradicted that of Dr. Gauer, or that Dr. Gauer's assessment was not credible because it lacked supporting clinical or objective findings. See 20 C.F.R. §§ 404.1527(d)(3)&(4), 416.927(d)(3)&(4) (explaining that the weight given a medical opinion depends, among other things, on its consistency with the record as a whole and the medical evidence presented to support it); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995)(explaining that the similarity between doctors' opinions enhances their credibility). The ALJ also permissibly concluded that Dr. Slutzker's minimal examination findings, coupled with his observations of "marked improvement" in plaintiff's subjective symptoms in response to conservative treatment, were at odds with Dr. Gauer's pessimistic assessment. See Connett v. Barnhart, 340 F.3d 871, 873, 875 (9th Cir. 2003) (holding that the ALJ permissibly rejected a treating physician's opinion in part because it was inconsistent with the opinions of the

---

[3]  A positive Finkelstein's test is significant for tenosynovitis, or inflammation of the tendons of the first dorsal compartment of the wrist. See Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2004); Stedman's Medical Dictionary tenosynovitis (27th ed. 2000).

examining physicians).

**Hypothetical question**

Plaintiff contends that the ALJ erred by failing to pose a hypothetical question to the vocational expert that included a limitation to "occasional bending" because the ALJ included that limitation in his RFC finding. [See AR 22].

A claimant is "not disabled" if he retains the residual functional capacity to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2; see also Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job."). Information from the DOT, or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61, 1982 WL 31387, at *2; Villa, 797 F.2d at 798.

The ALJ found that plaintiff can perform the light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and no frequent overhead reaching with the bilateral upper extremities. "Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. Sitting may occur intermittently during the remaining time. Unlike work at the medium level, frequent bending or stooping is not required for light work. Moreover, limitations in an individual's ability to climb, bend, kneel or crawl will not significantly erode the occupational base at either the light or medium level of exertion. See 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6-*7; SSR 83-10, 1983 WL 31251, at *5-*6; SSR 83-14, 1983 WL 31254, at *4-*5.

In his first hypothetical question to the vocational expert, the ALJ posited the existence of an individual with plaintiff's age, education, and work background who has "retained the full range of light residual functional capacity, reduced only in that she can occasionally, but not

frequently, crouch or bend." [AR 297]. The vocational expert testified that such a person could perform plaintiff's light, semi-skilled past relevant work as an administrative clerk. [AR 297]. In his second hypothetical question, the ALJ posited "the same RFC at light," and added that the individual could occasionally, but not frequently, reach overhead and could occasionally climb, balance, crouch, crawl, stoop, and kneel. [AR 297]. In other words, the second hypothetical differed from the first in that the ALJ added a limitation of no frequent overhead reaching and omitted a limitation in "bending." In his RFC finding, the ALJ found that plaintiff could not perform frequent overhead reaching and was limited to occasional "stooping, kneeling, *bending*, crouching, and crawling ...." [AR 22 (italics added)].

The ALJ's omission of a "bending" limitation in his second hypothetical question to the vocational expert does not make the ALJ's reliance on the expert's testimony erroneous. The ALJ's second hypothetical question to the vocational expert included a limitation in all of the particular types of "bending" that the Commissioner considers in evaluating RFC, so the omission of a limitation in "bending" is immaterial. "Bending" encompasses "[s]tooping, kneeling, crouching, and crawling," which "are progressively more strenuous forms of bending parts of the body." SSR 85-15, 1985 WL 56857, at *7. "Stooping" means "bending the body downward and forward by bending the spine at the waist," while kneeling means "bending the legs at the knees to come to rest on one or both knees." SSR 85-15, 1985 WL 56857, at *7. Crouching means "bending the body downward and forward by bending both the legs and spine," and crawling is "a form of locomotion involving bending" while on the hands and knees. SSR 85-15, 1985 WL 56857, at *7. Light work does not require more than occasional stooping or crouching and rarely involves crawling or kneeling. See SSR 85-15, 1985 WL 56857, at *7; SSR 83-14, 1983 WL 31254, at *2; SSR 83-10, 1983 WL 31251 at *5-*6.

Since the vocational expert testified, in response to the second hypothetical question, that a person who could occasionally "crouch, crawl, stoop, and kneel" could perform plaintiff's past work, it is irrelevant that the hypothetical question did not also ask him to consider occasional "bending." Even if "bending" somehow could be interpreted to mean something other than stooping, kneeling, crouching, or crawling, the first hypothetical question asked the

vocational expert to assume a limitation to occasional "bending or crouching," and the expert testified that such a limitation would not prevent plaintiff from performing her past work. Therefore, the vocational expert's testimony as a whole constitutes substantial evidence supporting the ALJ's finding that plaintiff's past relevant work could be performed with a limitation to occasional "stooping, kneeling, bending, crouching and crawling" and occasional overhead reaching. [AR 22].

**Duty to develop the record**

Plaintiff argues that the ALJ breached his duty to develop the record because (1) the record contains "evidence of significant upper extremity limitations which were not adequately evaluated by the ALJ"; (2) the ALJ did not utilize a medical expert during the hearing; and (3) the ALJ did not schedule a hearing to have the post-hearing medical reports evaluated. [JS 32].

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). A claimant, however, retains the burden of proving that he is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460 (rejecting the argument that the ALJ breached his duty to develop the record as an impermissible attempt to shift the burden of proving disability away from the claimant).

There is no merit to plaintiff's contention that the submission of Dr. Gauer's post-hearing reports triggered a duty on the part of the ALJ to develop the record further. As explained above, the ALJ permissibly rejected Dr. Gauer's disability opinion because it was unsupported by clinical signs or objective data, was premised wholly on plaintiff's properly-discounted subjective pain complaints, and was inconsistent with the other treating and examining medical reports. The ALJ was not required to develop the record further "to create a basis for the inference" that Dr. Gauer's assessment was inconsistent with the other substantial evidence

because he drew that "inference" based on other treating and examining records already in the record. Since the record before the ALJ was adequately developed and was not ambiguous, the ALJ was not obliged to undertake further development of the record. See Mayes, 276 F.3d at 460 (holding that the ALJ did not breach his duty to develop the record where the record was not inadequate or ambiguous); SSR 96-2p, 1996 WL 374188, at *4 ("Ordinarily, development [of the record] should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed.").

Contrary to plaintiff's suggestion, the ALJ did not usurp the role of a medical expert. Rather, he rationally determined that inconsistencies between the medical reports of record and other relevant factors justified rejecting the extreme functional limitations contained in Dr. Gauer's December 2004 post-hearing opinion in favor of the opinions of the examining and nonexamining physicians. That is the ALJ's role, and even if "the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." Mayes, 276 F.3d at 459. Moreover, plaintiff is wrong when she asserts that no doctor other than Dr. Gauer found a restriction on plaintiff's use of her upper extremities, and therefore that the ALJ impermissibly interposed his own opinion when he limited plaintiff to occasional overhead reaching. [AR 22]. The ALJ's upper extremity limitation is derived practically verbatim from the January 2004 opinion of the nonexamining state agency physician, who opined that plaintiff could do light work with no frequent overhead reaching of the bilateral upper extremities. [AR19, 234].

In addition, the ALJ did not err in failing to elicit testimony from a medical expert. The ALJ may call a medical expert to testify, but he or she is obliged to do so only in very limited circumstances. See 20 C.F.R. §§ 404.1527(f), 416.927(f) ("Administrative law judges may ask for and consider the opinions of medical advisors on the nature and severity of your impairment(s) and whether your impairment(s) equals the requirements of any listed impairment...."); SSR 96-6p, 1996 WL 374180, at *3-*4 (explaining that an ALJ "must" obtain medical expert opinion when (1) the evidence suggests that a judgment of listing equivalence

may be reasonable; or (2) when additional medical evidence received at the hearing may change the state agency consultants' finding that no listed impairment or equivalent is present). Those circumstances are not present here. Plaintiff does not argue that her condition meets or equals a listing even with the benefit of Dr. Gauer's post-hearing assessment and treatment records, which utterly lack the type of specific findings that would be required to establish a listing-level musculoskeletal or mental impairment. See Tackett v. Apfel, 180 F.3d 1094, 1099-1100 (9th Cir. 1999) (explaining that to "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question, and to "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to all of the criteria for the most similar listed impairment)(quoting 20 C.F.R. 404.1526); see, e.g 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00 (setting forth the criteria for establishing a musculoskeletal impairment under the listing). There is no reasonable possibility that Dr. Gauer's post-hearing evidence would have changed the analysis of whether plaintiff's condition met or equaled a listed impairment. Accordingly, the ALJ was not obliged to call a medical expert testimony to consider the post-hearing evidence.

For all these reasons, the ALJ did not breach his duty to fully and fairly develop the record.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: August 8, 2006

                                             /s/
                                 ANDREW J. WISTRICH
                                 United States Magistrate Judge